IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**DANAIS WILLIAMS,**

    **Plaintiff**

v.                                       Case No.:

                                           **JURY TRIAL DEMANDED**

**LUXURY AUTO RENTALS AND SALES, LLC**
d/b/a "Select Auto,"

    Serve: George E. Loizou
           4935 Virginia Beach Blvd.
           Virginia Beach, Virginia 23462

**and**

**SELECT SERVICE CENTER, LLC,**
d/b/a "Town Center Autoworks,"

    Serve: George E. Loizou
           232 Jersey Ave.
           Virginia Beach, Virginia 23462

## COMPLAINT

COMES NOW the Plaintiff, Danais Williams ("Plaintiff" or "Mr. Williams"), by counsel, and as and for his Complaint against the Defendants Luxury Auto Rentals and Sales, LLC, d/b/a "Select Auto," ("Select Auto") and Select Service Center, LLC, d/b/a "Town Center Autoworks" ("TCA") (collectively, "Defendants") states as follows:

1. Plaintiff is a natural person and a resident of Norfolk, Virginia.

2. Select Auto is a Virginia limited liability company operating a used car dealership in Virginia Beach, Virginia.

3. TCA is a Virginia limited liability company located in Virginia Beach, Virginia and, *inter alia* engaged primarily in the business of acting as Select Auto's service department.

4. Jurisdiction and venue are appropriate in this Court.

5. On or about March 4, 2022, Mr. Williams and Select Auto entered into a contract for Mr. Williams' purchase of a certain 2007 Mercedes-Benz CLS550, VIN WDDDJ72X57A101322 (the "Mercedes") at a total, pre-financing, price of $14,498.09, which included, *inter alia*, the Mercedes' base price of $10,988.00, a purported "service contract" through Assured Vehicle Protection ("AVP") for $1,995.00, plus taxes and various fees. *See* Exhibits 1 and 2.

6. Select further added a purported "debt cancellation fee" of $895.00 to the total sales price. Mr. Williams provided a $4,000.00 cash down payment and financed the remaining balance of the sale and "debt cancellation fee" through Global Loans, LLC ("Global") over a 48-month term at a rate of 29.94% *per annum*, for a total cost to him of $23,543.20.

7. There was no arbitration agreement associated with the sale of the Mercedes.

8. As a part of the sale, Select Auto issued Mr. Williams a limited warranty, which impermissibly purported to require any warranty work to be performed at TCA. *See* Exhibit 3.

9. TCA appears to be under common ownership and control as Select Auto. Select Auto and TCA are in privity with one another.

10. At sale, Select Auto additionally provided Mr. Williams with a "we owe" form stating that Select Auto would pay $200.00 toward repair of sway bar links and the Mercedes' heating system. *See* Exhibit 4.

11. Despite the "we owe" statement, Select Auto never performed the required work and never provided $200.00 toward such work.

12. Additionally, Mr. Williams brought the Mercedes to TCA within the warranty period for covered transmission work.

13. Instead of honoring the warranty, TCA instead insisted that Mr. Williams pay $930.10 for brake work before it would provide the covered repairs. *See* Exhibit 5.

14. Select Auto knew or should have known of the alleged brake issue when it sold the Mercedes to Mr. Williams, particularly as a provided CarFax report indicates that Select Auto and/or TCA had performed, *inter alia*, a Virginia state inspection and other inspections and/or service to the Mercedes prior to the sale to Mr. Williams. *See* Exhibit 6.

15. When Mr. Williams was unable to pay, TCA simply retained the Mercedes for a period of several months without actually providing any repairs to the Mercedes.

16. The AVP service contract Select Auto sold to Mr. Williams and financed through Global at the price of $1,995.00 specifically excludes most luxury and/or sports makes and models from coverage. *See* Exhibit 2, *supra* (Part 7, Section III).

17. All Mercedes-Benz models are excluded from coverage under the AVP service contract.

18. Select Auto accordingly sold worthless coverage to Mr. Williams for almost $2,000.00.

19. As Select Auto holds itself out as a seller of "luxury" used cars, it knew or should have known of the luxury exclusion of the AVP service contract but nonetheless sold Mr. Williams a worthless service contract for $1,995.00 at 29.94 APR.

20. Upon information and belief, it is a standard practice of Select Auto to sell worthless AVP service contracts to unsuspecting and often lower-income consumers.

21. Because Select Auto and TCA refused to perform the "we owe" and covered warranty repairs to the Mercedes, and instead improperly retained the Mercedes, Mr. Williams began inquiring as to getting his money back and rescinding the sale.

22. Select Auto responded to Mr. Williams' inquiries by refusing to make matters right and proceeded to pressure Mr. Williams into "trading" the Mercedes for a different vehicle, threatening to withhold and not apply his previously-paid down payment unless he swapped for a vehicle of equal or lesser value.

23. On or about July 16, 2022, Mr. Williams visited Select Auto, accompanied by his fiancée and seven-year-old son, to again discuss rescission of the original sale. During a meeting with an individual known to Mr. Williams as George in his office, George falsely accused Mr. Williams of having submitted fraudulent paystubs and refused to rescind the purchase of the Mercedes, specifically threatening Mr. Williams that he would be without a vehicle if he did not "swap" for another car. George additionally accused Mr. Williams of being a drug dealer.

24. Following Select Auto's pressure campaign and retention of the Mercedes as well as in light of his own need for a vehicle, Mr. Williams eventually agreed to "swap" the Mercedes for a certain 2006 Infiniti FX, VIN JNRAS08W96X202181 (the "Infiniti").

25. The base cash price for the Infiniti was $8,995.00, with the addition of another $1,995.00 AVP service contract as well as various fees and taxes, the total cash price of the Infiniti was $12,418.40.[1] Select Auto again added an $895.00 "debt cancellation fee." Select Auto then rolled over the purported "payoff amount" for the Mercedes of $11,173.00 into the sale of the

---

[1] The AVP service contract sold with the Infiniti does not appear to include a blanket coverage exclusion for Infiniti vehicles.

Infiniti and financed the sale at an annual rate of 29.99% for a total sales price of $22,837.44 over a 48-month term. *See* Exhibit 7.

26. Under this arrangement, despite the lower base cost of the Infiniti, Mr. Williams ended up financing $13,313.40 (finance charge of $9,524.04) at a monthly payment of $475.78, versus financing $11,393.09 (finance charge of $8,150.11) at a monthly payment of $407.15 for the original purchase of the Mercedes.

27. In the course of the sale of the Infiniti on or about July 18, 2022, Select Auto again issued Mr. Williams a limited warranty containing the same impermissible requirement for work to be performed only at TCA and issued a "we owe" form stating that nothing was owed by Select Auto. *See* Exhibits 8 and 9.

28. The purchase agreement for the Infiniti again did not contain an arbitration clause and the space for indicating whether the parties had entered into a separate arbitration agreement is unchecked. Select Auto sold the Infiniti to Mr. Williams on July 18, 2022 without an arbitration agreement.

29. Almost immediately following the purchase of the Infiniti on July 18, 2022, Mr. Williams began experiencing problems with it, including that dashboard service lights had come on.

30. Mr. Williams returned on or about July 19, 2022 and met with another individual named George in the TCA service center. During the course of this discussion, George questioned why Mr. Williams was not wearing any sort of work uniform, again insinuating that Mr. Williams does not actually work.

31. During the conversation, Mr. Williams expressed frustration at the manner in which he had been treated and asked George a question along the lines of what Select Auto sees

in him to justify poor treatment. In response, and face-to-face with Mr. Williams, George, who appeared to Plaintiff as being of Middle Eastern descent, replied with a racial slur toward Mr. Williams, who is African-American, calling him a "n----r with an attitude." Following this statement, Select Auto again refused to rectify or correct the situation. Upon information and belief, George is the owner and/or operator of both Select Auto and TCA.

32. On or about July 26, 2022, Mr. Williams received a voice mail from a Select Auto salesman, John Stoneberner. Likely due to a realization of the numerous illegal acts Select Auto and/or TCA had engaged in with regard to their dealings with Mr. Williams, Mr. Stoneberner demanded that Mr. Williams sign an arbitration agreement. Mr. Stoneberner, who is white, had also made unsolicited comments to Plaintiff that Plaintiff was from the "hood."

33. Mr. Stoneberner, acting in the course and scope of his employment with Select Auto, further went on to attempt to extort Mr. Williams by threatening to withhold provision of permanent tags for the Infiniti unless Mr. Williams signed an arbitration agreement.

34. Additionally, likely as a ruse to gain physical possession of the Infiniti for purposes of obtaining an arbitration agreement, Mr. Stoneberner advised Mr. Williams that he needed to bring the Infiniti back in for an "inspection," although Select Auto and/or TCA had already given the Infiniti a Virginia state inspection sticker less than a month previous.

35. Following Select Auto's insistence that Mr. Williams return the Infiniti for an inspection, Mr. Williams took the Infiniti to a reputable state inspection station, where it failed inspection due to improperly working headlights. The Infiniti was also noted to have low fluid levels and bad signals. Furthermore, in the limited time since purchase of the Infiniti, it had shown signs of a faulty transmission which was more than likely known to Select Auto and/or TCA at the

time of sale, as components appeared upon subsequent inspection to have been held together with duct tape.

36. Following the failed inspection, Plaintiff obtained an estimate from Chesapeake Nissan, an Infiniti dealer, for needed repairs to the Infiniti of over $10,000.00, which he was unable to pay. Defendants knew or should have known of the myriad problems with the Infiniti when it was sold to Plaintiff.

37. As of early October of 2022, the Infiniti was no longer operable.

38. At no point did Select Auto actually provide title to the Infiniti to Mr. Williams.

39. Subsequently, Mr. Williams relinquished the Infiniti to the lender, causing him financial harm and derogation of his credit.

## Count I—Breach of Contract

40. Plaintiff incorporates by reference the allegations set forth in Paragraphs One through 39 as if set out in full herein.

41. Defendants and Mr. Williams entered into two contracts—one for the purchase of the Mercedes and one for the purchase of the Infiniti, including associated warranty documents.

42. Defendants breached such contract(s) by, *inter alia*:

   a. Failing to provide the Mercedes in good and merchantable condition (Select Auto);

   b. Failing to honor the "we owe" as relating to the Mercedes (Select Auto and/or TCA);

   c. Failing to honor the warranty for the Mercedes (Select Auto and/or TCA);

   d. Failing to provide the Infiniti in good and merchantable condition (Select Auto);

   e. Failing to provide title to the Infiniti (Select Auto).

43. Plaintiff has been damaged by such breach(es).

## Count II—Breach of Magnuson-Moss Warranty Act

44. Plaintiff incorporates by reference the allegations set forth in Paragraphs One through 39 as if set out in full herein.

45. Plaintiff is a consumer under the Magnuson-Moss Warranty Act. *See* 15 U.S.C. § 2301(3).

46. Defendants Select Auto and TCA are suppliers under the Magnuson-Moss Warranty Act. *See* 15 U.S.C. § 2301(4).

47. Defendants have failed and refused to comply with their statutory obligations regarding the warranties given to Plaintiff by, *inter alia:*

    a. Requiring warranty work for the Mercedes to be performed only by TCA;

    b. Failing and refusing to honor the warranty for the Mercedes;

    c. Requiring warranty work for the Infiniti to be performed only by TCA; and

    d. Failing and refusing to honor the warranty for the Infiniti.

## Count III—Virginia Consumer Protection Act

48. Plaintiff incorporates by reference the allegations set forth in in Paragraphs One through 39 as if set out in full herein.

49. Defendants breached the Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq.* by, *inter alia:*

    a. Failing to provide the Mercedes in good and merchantable condition (Seleect Auto and TCA);

    b. Selling Plaintiff the Mercedes despite actual or presumed knowledge that it was not in good and merchantable condition (Select Auto and TCA);

    c. Failing to honor the "we owe" as relating to the Mercedes (Select Auto and TCA);

    d.    Failing to honor the warranty for the Mercedes (Select Auto and TCA);

    e.    Selling Plaintiff an AVP service contract Defendant Select Auto knew or should have known did not cover the Mercedes (Select Auto);

    f.    Forcing Plaintiff to "swap" the Mercedes for the Infiniti at a higher total payment, despite the Infiniti's lower base price (Select Auto);

    g.    Failing to provide the Infiniti in good and merchantable condition (Select Auto and TCA);

    h.    Selling the Infiniti to Plaintiff despite actual or presumed knowledge that it was not in good and merchantable condition (Select Auto and TCA);

    i.    Failing to provide title to the Infiniti (Select Auto);

    j.    Charging Plaintiff "debt cancellation fees" for both vehicle purchases (Select Auto);

    k.    Requiring any warranty work for both vehicles to be performed at TCA only (Select Auto and TCA).

    l.    Attempting to extort Plaintiff into signing an arbitration after the sale (Select Auto);

    m.    Failing and refusing to provide title to the Infiniti (Select Auto).

50.    Plaintiff has been damaged by such breach(es).

51.    Defendants' breach(es) were willful.

### Count IV—Racial Discrimination in Violation of 42 U.S.C. § 1981

52.    Plaintiff incorporates by reference the allegations set forth in in Paragraphs One through 39 as if set out in full herein.

53.    Section 1981 prohibits racial discrimination in the making and enforcement of contracts.

54. Select Auto and TCA, through their employees, intentionally discriminated against Plaintiff on the basis of race by refusing to honor the "we owe" statement, refusing to honor the warranties, refusing to transfer title to the Infiniti and by using racial slurs and/or referring to racial stereotypes while denying service when sought, thereby impairing Plaintiff's right to make and enforce contracts on the same terms as white citizens.

55. As a direct and proximate result, Plaintiff suffered economic and non-economic damages, including emotional distress.

56. Plaintiff is entitled to recover his reasonable attorney fees, costs and expert witness expenses.

WHEREFORE, the Plaintiff, Danais Williams, by counsel, prays that this honorable Court enter judgment in his favor, jointly and severally as applicable, inclusive of actual damages, compensatory damages, treble damages, non-economic damages, nominal damages and punitive damages, plus his attorneys' fees and costs, as well as such other relief as may be just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL MATTERS SO TRIABLE**

**DANAIS WILLIAMS**

By: _____
Of Counsel

Steven B. Wiley (Va. State Bar No. 47531)
WILEY LAW OFFICES, PLLC
440 Monticello Ave., Suite 1817
Norfolk, Virginia 23510
(757) 955-8455
swiley@wileylawoffices.com

Todd M. Gaynor (VSB No. 47742)
GAYNOR LAW CENTER, P. C.

440 Monticello Ave., Suite 1800
Norfolk, Virginia 23510
(757) 828-3739
tgaynor@gaynorlawcenter.com

11